Argument for Appellant.

(March 9, 1903.)

## MEYER v. MUNRO.

### [71 Pac. 969.]

CHATTEL MORTGAGE ON CORDWOOD—WOOD DEALER—AUTHORITY TO SELL—EXTRINSIC EVIDENCE—DECLARATION OF MORTGAGOR.—1. Under the evidence in this case the chattel mortgage on 285 cords of wood containing the following clause, to wit: "And until default be made in the payment of the said sum of money the said party of the first part, his executors, administrators and assigns, may remain and continue in the quiet and peaceable possession of the said wood and chattels and in full and free use and enjoyment of the same." *Held,* not to authorize the sale of said wood by the mortgagor. 2. When a chattel mortgage is attacked, evidence is admissible which tends to show that it was made in bad faith or for the purpose of hindering, delaying or defrauding creditors either on the part of the mortgagee or of both the mortgagor and mortgagee. 3. Declarations of the mortgagor made after the execution of the mortgage as to his purpose in executing the mortgage, or the amount due, or any other statement touching the *bona fides* of the transaction are inadmissible, unless the mortgagee is shown to have been a party to a common unlawful purpose between mortgagor and mortgagee.

(Syllabus by the court.)

APPEAL from District Court, Boise County.

The facts are stated in the opinion.

H. L. Fisher, for Appellant.

The mortgage in question covered the stock in trade of a wood dealer, permitted him to remain in possession with power to sell the mortgaged stock, and contained no provision that the proceeds and profits of the sale of said mortgaged property should be applied in payment of the mortgage debt, and is therefore void as to creditors. (*Lewiston Nat. Bank v. Martin,* 2 Idaho, 734, 23 Pac. 920; *Harbison v. Tufts,* 1 Colo. App. 140, 27 Pac. 1014; *Lyon v. Council Bluffs Sav. Bank,* 29 Fed. 566; *Aiken v. Pascall,* 19 Or. 493, 24 Pac. 1039; *Wilson v.*

*Voight,* 9 Colo. 614, 13 Pac. 726; *Roberts v. Johnson,* 5 Colo. App. 406, 39 Pac. 596; *Brasher v. Christophe,* 10 Colo. App. 284, 15 Pac. 408; *Rocheleau v. Boyle,* 11 Mont. 451, 29 Pac. 872; *Byrd v. Forbes,* 3 Wash. Ter. 318, 13 Pac. 715.) The power to sell will be implied from the terms of the instrument and character of the mortgaged property. (*Brasher v. Christophe, supra; Harbison v. Tufts, supra; Collins v. Myers,* 16 Ohio, 547; *Roden v. Norton,* 128 Ala. 129, 29 South. 637; *Hedges v. Polhemus,* 9 Misc. Rep. 680, 30 N. Y. Supp. 556; *Robbins v. Parker,* 44 Mass. 117; *Simpson v. Mitchell,* 16 Tenn. 417; *Davenport v. Foulke,* 68 Ind. 382, 34 Am. Rep. 265; *Mobley v. Letts,* 61 Ind. 11; *Benedict v. Renfro,* 75 Ala. 121, 51 Am. Rep. 431; *Perry v. Shenandoah Nat. Bank,* 27 Gratt. 755; *Sommerville v. Horton,* 4 Yerg. 541, 26 Am. Dec. 245.) The fact that a mortgage was taken for a larger amount than was due, from one known by the mortgagee to be in failing circumstances, and pressed by his creditors, is conclusive evidence of fraud. (*Butts v. Peacock,* 23 Wis. 359; *Bailey v. Burton,* 8 Wend. 339; *Divver v. McLaughlin,* 2 Wend. 596, 20 Am. Dec. 655; *Cheatham v. Hawkins,* 80 N. C. 161; *Wallach v. Wylie,* 28 Kan. 138.) Defendants pleaded and proved an estoppel. Under the plainest principles of equitable estoppel, the mortgagees should not be allowed to enforce this mortgage. (*Lick v. Munro,* 8 Idaho, 510, 69 Pac. 285.) A much wider latitude of inquiry is permissible in cases involving a charge of fraud than those where no such element exists or is alleged. (*Murch v. Swensen,* 40 Minn. 421, 42 N. W. 290; *Walter v. Garnant,* 13 Pa. St. 515, 53 Am. Dec. 491; *Stewart v. Severance,* 43 Mo. 322, 97 Am. Dec. 392; Bump on Fraudulent Conveyances, 588, 589.)

Karl Paine and Bert Resser, for Respondents.

We need not cite authorities to the effect that the mortgagees were not affected by the fact that the mortgagor sold part of the wood, or that he contemplated fraud against his creditors. The mortgagees must have consented to such sale, or had knowledge of such fraudulent intent. There is no evidence of either such knowledge or consent. (Jones on Chattel Mortgages, 4th ed., secs. 335-343.) The law of Missouri as determined by the

courts, is identical with the law of this state. Yet it is there held that the mortgage is not void as to creditors, unless it appears from a consideration of the whole instrument, that it was necessarily the intention of the parties that the mortgagor should continue to sell; and that such intention must appear either by express terms or by necessary implication. (Jones on Chattel Mortgages, sec. 397; *Weber v. Armstrong,* 70 Mo. 217.) The intent of the statutes providing for the recording of mortgages on personal property was to do away with the necessity of any delivery of the property, and to enable mortgagors to hold possession until default. For this purpose registration is required as giving, perhaps, even greater notoriety to the transaction than delivery and retention of possession. Registration thus becomes a substitute, as well for delivery as for retaining possession of the property. (Jones on Chattel Mortgages, 4th ed., 211; *Lewiston · Nat. Bank v. Martin,* 2 Idaho, 734, 23 Pac. 920.) A mortgagee's title cannot be defeated by the subsequent acts or declarations of the mortgagor, impeaching it as void against his creditors. (*Toms v. Whitmore,* 6 Wyo. 220, 44 Pac. 57, 58; Jones on Chattel Mortgages, sec. 342.)

STOCKSLAGER, J.—This case was tried in the district court of Boise county. A jury, together with findings of fact and conclusions of law, were expressly waived. Judgment was rendered and entered in favor of the plaintiff for the sum of $448.81 and costs. Judgment filed and entered November 30th, 1901.

On the twenty-seventh day of June, 1902, a statement on motion for a new trial was settled and allowed, and on the twenty-third day of August, thereafter, the motion was overruled. It is from this order the appeal is taken. The complaint alleges the conversion of two hundred and sixty-eight cords of cordwood by the defendant, as sheriff of Boise county, by levying upon and selling the same, plaintiffs claiming title thereto by virtue of a chattel mortgage of date September 12, 1900.

Appellant in his answer justifies such seizure and sale by virtue of two executions based on judgments against John

Rost, the mortgagor. It is urged by appellant that this mortgage was void and of no effect as against the creditors of Rost, to wit: Braunschweiger & Co., T. H. Lermon, and Henry Larsen, for the reason that by the terms of said chattel mortgage as construed by appellant, Rost was permitted to remain in possession of said wood, and to sell and retail the same, and did remain in such possession and continued to sell the same in the usual course of trade. Also, that the mortgage contained no provision that the proceeds of the sale of such wood should be applied on the payment of the debt alleged to be due the mortgagees. That said wood was an article of merchandise, and it was cut and prepared for said Rost for the purpose of sale, etc.

It will thus be seen that the important question presented to us for consideration is the validity of the chattel mortgage and was it void as to the creditors of John Rost.

The first assignment of error is that the court erred in holding said mortgage valid, and says the undisputed evidence showing that Braunschweiger & Co., T. H. Lermon and Henry Larsen were *bona fide* creditors of Rost at the time the mortgage was executed and are still such creditors.

The second assignment is that it was error to hold that defendant was liable to plaintiff, it appearing that the mortgage is void. Third, that the judgment against the defendant for $448.81 is erroneous and unsupported by the evidence. Fourth, that the decision is not supported by the law or evidence. Fifth, the court erred in refusing to permit defendant Munro's witness, Henry Larsen, to testify as to a conversation with John Rost as to the wood in controversy. Sixth, the court erred in refusing to permit Munro's witness, Larsen, to testify as to whether he ever had a conversation with Rost as to the cordwood. The seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth assignments of error are based upon the refusal of the court to permit witnesses to testify to certain conversations between them and Rost. The assignments of error will be disposed of in the order named.

Counsel for appellant calls our attention to a number of authorities which he urges support his contention that the chattel mortgage set out in the complaint is void as to the creditors,

of Rost, for the reason that the instrument by its terms permits him to remain in possession of the wood and have the use and enjoy the same. An inspection of the instrument discloses that it is the usual form of chattel mortgages in use in this state.

Section 3386 of the Revised Statutes provides: "That where the mortgagor retains possession of mortgaged chattels the recording of the mortgage shall protect the mortgagee against attaching creditors."

Counsel for appellant insists that the court construed this section in *Lewiston Nat. Bank v. Martin,* 2 Idaho, 734, 23 Pac. 920. In that case it is shown that: "The mortgaged property consisted of the contents of the drugstore, including the fixtures thereof and an apparatus for bottling soda." It had a similar clause to the one in question as to the possession by the mortgagor, power to sell, etc. "Dr. McGrail, the mortgagor, was a witness in that case, and without objection explained what was meant by the free use of the goods given him by the terms of the mortgage. That use was to carry on a retail drug business."

In *Wilson v. Voight,* 9 Colo. 614, 13 Pac. 726, the opinion says: "A stock of merchandise constituted the larger part of the property covered by the chattel mortgage."

In *Aiken v. Pascall,* 19 Or. 493, 24 Pac. 1039, the opinion says: "The facts show that the defendant was a retail show dealer," etc., and quoting the syllabus: "When it appears either on the face of a chattel mortgage or by parol evidence that the mortgagee of personal property has given to the mortgagor power to dispose of the property mortgaged, and to apply the proceeds to his own use, the mortgage is void as to attaching creditors."

*Rocheleau v. Boyle,* 11 Mont. 451, 28 Pac. 872, was a chattel mortgage covering a baker's stock in trade, also a horse, wagon, harness, fixtures, etc. It was held that the mortgage on the stock in trade was void, but good as to the other property.

*Byrd v. Forbes,* 3 Wash. Ter. 318, 13 Pac. 715, holds that a chattel mortgage on a stock of goods with possession and power to sell and dispose of the same is void.

We are in accord with the rule laid down in the authorities above cited.

The property covered by the mortgage is described therein as follows: "Two hundred and eighty-five cords of cordwood, situated, lying and being in the head of Bear Lake gulch about three miles south of Idaho City. Said wood is about one-half or three-fourths of one mile southeast of Baker's Reservoir." No objection is made as to the sufficiency of this description. It is contended by appellant that the mortgage is void on its face on account of the following clause contained therein: "And until default be made in the payment of the said money, the said party of the first part, his executors, administrators and assigns, may remain and continue in the quiet and peaceable possession of the said goods and chattels and in the full and free use and enjoyment of the same." Counsel insist that the "full and free use and enjoyment" of the cordwood described in the mortgage necessarily means either the sale or consumption of the mortgaged property, and was therefore an express permission to the mortgagor to dispose of the property without being required by the terms of the mortgage to account to the mortgagee for the proceeds of the sale and the application of the same to the payment of the debt. We think this would be true if the property here mortgaged were the stock in trade of a retail merchant or one whose possession and use of the same in the ordinary course of business means the daily sale of the same. But we are not prepared to say that the sale of such property as cordwood falls within the rule announced by this court in *Lewiston Nat. Bank v. Martin, supra.* The wood was corded up in the woods where it had been cut and might have remained there until the maturity of the mortgage or payment of the debt as a security to the mortgagee and without prejudice to other creditors. We think the mortgage being upon the class and character of property therein described was valid upon its face.

On the other hand, the mortgage was subject to attack upon questions of fact, by extrinsic evidence, to show that the property covered by it was at the time of the execution thereof the stock in trade of a wood merchant from which he was con-

stantly selling, or that it was understood between the mortgagor and mortgagee that the mortgagor might sell and dispose of any of the property and apply the proceeds to his own use, or that the mortgagor did in fact sell and dispose of any of the property and retain the proceeds with the knowledge and acquiescence of the mortgagee, or any other fact which would tend to show bad faith or a purpose to hinder, delay or defraud creditors of the mortgagor either on the part of the mortgagee or of both the mortgagor and mortgagee. The facts were submitted to the court, a jury having been waived, and the court evidently found against the contention of appellant on all these points, and after a careful examination of the evidence, we think it sufficient to support the judgment.

Assignments of error from 7 to 15, inclusive, are taken to the rulings of the court in refusing to allow witnesses on the part of defendant to testify to conversations had with Rost, the mortgagor, after the execution of the mortgage, concerning his purpose in executing the mortgage, and that he did not owe the mortgagee the amount secured by the mortgage and other statements as to the *bona fides* of the mortgagee.

Statements and declarations of the mortgagor made after the execution of the mortgage could not invalidate the mortgage unless the mortgagee were shown to be a party to or cognizant of the fraudulent acts or purposes of the mortgagor. If the declarations of debtors as to their purposes and objects in giving security and as to the amount due were admissible against their creditors, it would be the shortest road yet blazed for the liquidation of debts. Appellant contends that a conspiracy existed between the mortgagor and mortgagee whereby the property was to be covered by this mortgage to protect it from the other creditors of the mortgagor. In order to have made this evidence admissible it was necessary for the defendant to first show, at least, a *prima facie* case of conspiracy. This was not done, and we therefore think the court properly rejected the proposed evidence.

In support of this position see the following authorities which clearly state these principles: *Winchester etc. Mfg. Co. v.*

*Creary,* 116 U. S. 161, 6 Sup. Ct. Rep. 369; *Toms v. Whitmore,* 6 Wyo. 220, 44 Pac. 56; Jones on Chattel Mortgages, sec. 342; *Grimes Dry Goods Co. v. Malcolm,* 164 U. S. 490, 17 Sup. Ct. Rep. 158.

The judgment of the trial court is affirmed with costs to respondents.

Sullivan, C. J., and Ailshie, J., concur.