BARTON SAVINGS BANK & TRUST CO. *v.* RALPH HAMBLETT.

February Term, 1935.

Present: MOULTON and SHERBURNE, JJ., and BUTTLES and DAVIS, Supr., JJ.

Opinion filed May 7, 1935.

*Lee E. Emerson* and *John W. Redmond* for the plaintiff.

*Hubert S. Pierce* for the defendant.

SHERBURNE, J. This is an action of tort for the conversion of a quantity of maple syrup. The facts are agreed to. It appears that on February 10, 1933, before the sugar season had commenced, David and Blanche Gelineau of Charleston, gave the plaintiff a mortgage of the following personal property: "All the maple products of every kind and description produced on my farm during the season of 1933. And all that may be hereafter produced, * * *. Said property is located at my farm in Charleston, Vermont," to secure their demand note payable to the plaintiff and dated June 1, 1928, for $3,575.00, which is unpaid. This mortgage was executed with all the formalities of both a real estate and a chattel mortgage and was recorded in both the real estate and personal property records of the town of Charleston. The Gelineaus lived upon a farm in Charleston, owned by them as tenants by the entirety. Neither of them then owned, or since has owned, any interest in any other farm in that town. At Derby Line on May 10, 1933, the defendant, as agent for a maple products concern, bought one drum and one can of maple syrup from David Gelineau for $22.64. This syrup was produced on the Gelineau farm in Charleston during the sugar season of 1933. At the time of the purchase the defendant had no personal notice where the syrup was produced, nor other than constructive notice that the plaintiff claimed any interest in the syrup by way of mortgage. On these facts the court rendered judgment for the defendant, and the plaintiff excepted.

The exception to the judgment raises two questions: (1) Did David and Blanche Gelineau, under these circumstances at the time the mortgage was given, have such an interest in the sugar crop to be produced during the sugar season of 1933, as to constitute the subject matter of a valid mortgage? (2) Was the record of the mortgage constructive notice to the defendant of the plaintiff's interest in the syrup?

The principles of law laid down in *Kimball* v. *Sattley*, 55 Vt. 285, 45 A. R. 614, furnish the answer to these questions. That was a case of a chattel mortgage in form of all the grass and oats and corn growing upon a farm owned and possessed by the mortgagor. As in the instant case, the mortgage was also executed with all the formalities of a real estate mortgage, although it was only recorded in the records of personal property mortgages. It was there held that, "although growing grass may

be realty, the owner of it and of the land upon which it grows may mortgage it as a chattel and that such mortgage is good between the parties; and that when the mortgage becomes absolute by the non-performance of the conditions thereof before an actual severance of the grass, it operates a severance in law so as to change the grass from real to personal property, and that a record of the mortgage, as required by law in the case of chattel mortgages, is constructive notice to third parties after the grass is cut; and that such mortgage and record then constitute a valid lien as against an attachment as a chattel of the mortgagor.''

■ ■ We take judicial notice, that in the late winter and early spring the sap of the maple tree contains a percentage of sugar. When this sap is boiled so as to evaporate or reduce the water content it thickens into a syrup, and if the process is continued and the impurities are removed a fine quality of sugar is produced. The sugar in the sap while in the tree, like growing grass, trees, and fruit of trees, is, in contemplation of law, a part of the soil of which it is the natural growth. But the defendant says that maple syrup and sugar are not natural products of maple trees, but are manufactured from the sap, a raw product. We are unable to follow this argument. The valuable content in the sap is sugar. Simply because it requires labor and expense to utilize the sugar does not, in our opinion, signify that the syrup and sugar made out of the sap are not natural products. As well might it be said that hay is not a natural product because it is necessary to cut the grass and dry it.

As contemplated by the mortgage, the crop intended to be covered was not merely the sap, but the syrup and sugar to be made therefrom. This was not then in actual existence, but it potentially belonged to the Gelineaus as an incident of their farm. In the language of Chief Justice Hobart in *Grantham* v. *Hawley,* Hob. 132; ''Land is the mother and root of all fruits. Therefore, he that hath it may grant all fruits that may arise upon it after, and the property shall pass as soon as the fruits are extant.'' As said in *Kimball* v. *Sattley, supra,* after quoting the above: ''The doctrine of potential possession is restricted to cases where the property producing the product, growth or increase belongs to the mortgagor, and is not extended to mere

possibilities or expectancies of acquiring property without any present interest in it.''

 This case is full authority for the instant case, and we hold that the record of the mortgage in the records of personal property was constructive notice to the defendant after the sap had run and been gathered; and that the mortgage and record then constituted a valid lien upon the syrup made from the sap as against the defendant.

As in that case, ''the description of the property was *prima facie* sufficient. It is not necessary that the property should be so described as to be capable of being identified by the written recital. The description need not be such as would enable a stranger to select the property, but it must point out the subject-matter of the mortgage so that a third person by its aid, together with the aid of such inquiries as the instrument itself suggests, may identify the property covered.'' See, also, *Rogers* v. *Whitney,* 91 Vt. 79, 81, 99 Atl. 419.

In *Kimball* v. *Sattley, supra,* as in the instant case, the mortgage was given to secure an overdue debt, and the condition was broken immediately upon execution. That case did not decide that the same result would not have followed if the condition of the mortgage had not been broken. Shortly before that case was decided, it had been held in *Calkins* v. *Clement,* 54 Vt. 635, that a mortgagee should show a breach of the condition before he could rightfully assert title and possession to mortgaged personal property. However, in *Longey* v. *Leach,* 57 Vt. 337, it was held that a chattel mortgage vests title in the mortgagee subject to the mortgagor's right to redeem, and that, if there is no stipulation to the contrary, the mortgagee has the right at any time to take possession of a mortgaged chattel. In *Mason* v. *Sault,* 93 Vt. 412, 415, 108 Atl. 267, 18 A. L. R. 1426, it was held that a chattel mortgage passes the general property, and if the condition is not duly performed, the whole title vests absolutely subject to the right to redeem; and that the mortgagor's possession is permissive and not a matter of right, and that he has no better right to sell the mortgaged chattels and appropriate the proceeds of the sale, than he has to dispose of any other property of the mortgagee that may come into his possession.

 The agreed statement of facts, subject to plaintiff's claim of irrelevancy and immateriality, shows that it is the cus-

tom of. farmers in the vicinity of Charleston to bring their syrup to the railroad station for sale when notice is given that purchasers will car syrup. Although the agreed statement also shows that no verbal license or permission was given to sell the syrup, the defendant argues from the foregoing that the mortgage lien was waived as to innocent purchasers because of an implied license to dispose of the property. We need not decide if a custom can give such an implied license. The town of Barton, in which the plaintiff bank is located, does not adjoin Charleston. There is no presumption that a nonresident in a community is cognizant with a usage or custom prevailing in a particular trade or locality. When custom or usage is admissible, at all, it is only on the ground that the parties who made the contract were both cognizant of it, and made the agreement with reference to it. *Moncion* v. *Bertrand,* 98 Vt. 332, 339, 127 Atl. 371.

We have disposed of all matters suggested by defendant's brief that merit attention.

*Judgment reversed, and judgment for the plaintiff to recover $22.64 and its costs.*