OREL A. JOHNSON *v.* WILLIAM S. TUTTLE ET AL.

May Term, 1936.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON and SHERBURNE, JJ.

Opinion filed October 6, 1936.

*Clayton H. Kinney, Jones & Jones,* and *Seymour P. Edgerton* for the defendants.

*Novak & Bloomer* for the plaintiff.

Powers, C. J. This is a tort action in the form of trover involving the ownership of a herd of cows and two horses. The plaintiff claims title to this property by virtue of a chattel mortgage thereon given to him by his daughter, Mrs. Lucy Blanchard, on February 8, 1933, to secure a note for $1,500. His evidence tended to show that Mrs. Blanchard bought the property of Alexander Cameron, the father and agent of Ella Cameron, a defendant, in July, 1932. The defendants claimed, and their evidence tended to show, that Ella owned the property at all times here material, having bought it with her own money through her father, acting as her agent. It appeared at the trial that she, Ella, replevied the cows in question in a suit against

294

Mrs. Blanchard and her husband, Floyd, in which suit a plaintiff's judgment was affirmed in this Court. *Cameron* v. *Blanchard*, 107 Vt. 51, 176 Atl. 290.

A jury trial in the case in hand resulted in a verdict for the plaintiff, which included a sum as damages for the conversion of the two horses. Judgment on the verdict was rendered, and the defendants excepted.

At the close of the evidence, each of the defendants moved for a directed verdict. These motions were overruled subject to defendants' exceptions.

So far as Ella Cameron's motion is concerned, all we need say is that, as to her, the evidence plainly made a case for the jury, and no error was committed by the ruling thereon.

■ ■ The motion of W. S. Tuttle presents an entirely different question. He had no interest in the cattle in question, and he never had anything to do with them. All that is here claimed against him is that when the officer started out to foreclose the chattel mortgage, he went to Tuttle and demanded the property of him, and he refused to deliver it. There was no evidence that Tuttle had possession of the property or was in a position to comply with the officer's demand. So this alleged refusal was no evidence of a conversion. *Tinker* v. *Morrill*, 39 Vt. 477, 480, 94 A. D. 345, and cases cited. There was also evidence tending to show that when the officer demanded the property of Tuttle, the latter telephoned Ella Cameron informing her that the officer would be up to see her, and telling her not to give up the property on the officer's demand. This is all the basis there is in the record for a suit against Tuttle for the cattle. It appeared that Miss Cameron is a trained nurse; that Tuttle was suffering from diabetes; that Miss Cameron lived at his house and took professional care of him; and that he aided and advised her in some business matters. That is all that is shown by the record. In these circumstances, Tuttle's telephone to Miss Cameron, unless relied upon, was an altogether too unstable basis for an action against him. The court instructed the jury, in effect, that if Tuttle advised, directed, or commanded Ella Cameron to withhold possession of the property, and she complied therewith, recovery might be had against him. To this instruction, Tuttle excepted. The law is sometimes stated in terms much like those used by the court. But in the circumstances here shown, the instruction was unwarranted. To be

sure, in form, the telephone message was a command. But Tuttle had no authority to command Miss Cameron, or to control her action regarding the property, in any way.

There is no evidence in the record that Miss Cameron relied, in the slightest degree, upon the Tuttle message when she refused the officer's demand, which fact was essential, as the jury was instructed.

For reasons hereinafter given, anything Tuttle may have had to do with the horses was immaterial.

■ The Tuttle motion for a verdict should have been granted, and his exception is sustained.

■ ■ The defendants offered to show that Mrs. Blanchard, prior to the time she mortgaged the property to the plaintiff and while it was in her possession, at different times and in the presence of various persons, admitted that it belonged to Miss Cameron. This evidence was offered not only to prove the fact admitted, but also to impeach Mrs. Blanchard as a witness. Some of these offers were rejected and the defendants excepted. The evidence was admissible on both grounds stated, and it was error to exclude it. The plaintiff succeeded to such title as Mrs. Blanchard had to the property covered by the chattel mortgage at its date, and to nothing more. If she owned the property then, he may prevail here; if Miss Cameron owned the property then, the plaintiff obtained no title by his mortgage and must fail here. By repeated and recent approval, it has come to be the established rule of this jurisdiction that "admissions made by the assignor of a chattel or personal contract, prior to assignment, and where the assignee must recover through the title of the assignor and succeeds only to that title as it stood at the time of the transfer, bind the assignee." *Hayward Rubber Co.* v. *Duncklee,* 30 Vt. 29, 39; *Downs* v. *Belden,* 46 Vt. 674, 677; *Alger* v. *Andrews,* 47 Vt. 238, 241, 242; *Waterman* v. *Moody,* 92 Vt. 218, 230, 231, 103 Atl. 325; *Pope* v. *Hogan,* 92 Vt. 250, 256, 102 Atl. 937; *Ravine House Co.* v. *Bradstreet,* 102 Vt. 370, 375, 148 Atl. 481. This rule is generally adopted by the courts. See 2 Wig. Ev. §§ 1080-1087.

■ ■ But when Mrs. Blanchard had executed the chattel mortgage her relation to the property, so far as her future admissions were concerned, was entirely changed. She had conveyed the title to this plaintiff, subject only to the right of redemption. *Mason* v. *Sault,* 98 Vt. 412, 415, 108 Atl. 267, 18

A. L. R. 1426; *Paska* v. *Saunders,* 103 Vt. 204, 215, 153 Atl. 451; *Barton Sav. Bk. & Tr. Co.* v. *Hamblett,* 107 Vt. 311, 315, 178 Atl. 900. The plaintiff took that title clogged with such admissions as the mortgagor had previously made, but she had, by executing the mortgage, so far parted with her title that she had terminated the privity between herself and the plaintiff as to her future admissions, and they were not admissible against him.

Thus, in an action by a mortgagee against a creditor of the mortgagor who claimed the property under an execution against the latter, it being claimed that the mortgage was made with a fraudulent intent, the declarations of the mortgagor immediately before and in contemplation of the act, may be given in evidence against the mortgagee. But his declarations made after the execution of the mortgage are not so admissible, because he was not then the owner. *Harshaw* v. *Moore,* 34 N. C. 247, 249, 250.

It was said in *Mathes* v. *Cover,* 43 Iowa, 512, 513, that it is true that a mortgagee is, in some respects, privy in estate with the mortgagor; that he is so with respect to the property as it stands when he takes the mortgage, but not as it may afterwards become, unless that which afterwards occurs to affect the estate is the legal outcome of that which existed when the mortgage was executed.

In *Myer* v. *Munro,* 9 Idaho, 46, 71 Pac. 969, 970, it is held that declarations of a mortgagor after the execution of the mortgage, to the effect that it was fraudulent and fictitious, are inadmissible, unless it is first shown that the mortgagee was a party to the fraud.

In *Howard* v. *Franklin Insurance Co.* (Tex. Civ. App.), 226 S. W. 447, it is held that the admissions of a mortgagor, made after the execution of the mortgage and in the absence of the *bona fide* mortgagee, that he had stolen the automobile covered by the mortgage, are inadmissible against the mortgagee, citing *Mower* v. *McCarthy,* hereinafter referred to.

In *Dick* v. *King,* 80 Mont. 40, 257 Pac. 1022, the general rule is recognized that admissions made after one has parted with his title are inadmissible; but it is held that this rule is subject to the exception that when a common fraudulent purpose of the parties is first shown, they may be received against the grantee.

The distinction which we are here making between Mrs. Blanchard's admissions before and after the execution of the

mortgage was evidently in the mind of Rowell, J., when he said in *Barber's Admr.* v. *Bennett*, 60 Vt. 662, 666, 15 Atl. 348, 350, 1 L. R. A. 224, 6 A. S. R. 141: "So when by succession of title a party to a suit is so far in privity with another that he could be affected by his acts, then he can be affected by his admissions, [but] only when they are made during the latter's interest in the subject-matter of the suit; for then only can he engraft them upon the interest so that they will follow it into the hands of his successor.''

■ And finally, the very question which we are now discussing was before this Court in *Mower* v. *McCarthy*, 79 Vt. 142, 64 Atl. 578, 7 L. R. A. (N. S.) 418, 118 A. S. R. 942. There a verbal mortgage, under which the mortgagee had taken possession, was involved. The plaintiff, a trustee in bankruptcy, offered in evidence the statements of the mortgagor, made (as an examination of the papers shows) after the verbal mortgage was given, to the effect that there was no mortgage on the property. Subject to exception they were excluded. This ruling was upheld by this Court, on the ground that the mere relation of mortgagor and mortgagee did not create such privity of estate as to entitle the plaintiff to use the declarations so made against the mortgagee. The language of a court is always to be taken in connection with the subject-matter of the discussion. It is often the case, that to understand the court correctly, one must first be assured of just what it is that is being talked about. It is so with this Mower case. Correctly understood, it is full authority for the exclusion of such of Mrs. Blanchard's admissions as were made after the execution of the chattel mortgage, and does not in the least degree cast doubt on the admissibility of those that were made before.

What we have been saying about these subsequent admissions relates solely to their admissibility as evidence in support of Miss Cameron's title; and we hold that they were not admissible as such evidence.

■■ But Mrs. Blanchard was a witness for the plaintiff. She testified that she bought the cattle of Alec Cameron in July, 1932, some seven months before the chattel mortgage was given, which was evidence tending to show that she owned them at the date of the mortgage. Her testimony, therefore, affected a vital issue in the case. To weaken it, her admissions in disparagement of her title, though made after the date of the mortgage,

were admissible, not as evidence of the facts admitted, but as evidence to impeach her as a witness—provided, of course, a proper foundation for such impeachment had been laid. With such a foundation provided, a witness may always be impeached by evidence of his statements made elsewhere, which are inconsistent with his relevant testimony. *Robinson* v. *Leonard,* 100 Vt. 1, 5, 134 Atl. 706.

It was error to exclude these admissions when offered as impeaching evidence.

 As we have seen, the plaintiff was allowed to recover for the conversion of the two horses covered by his mortgage. This was error. Mrs. Blanchard sold them with his consent. In any possible view of the case, when the plaintiff consented to this sale, he waived his mortgage on them, and the purchaser took whatever title Mrs. Blanchard had free of the plaintiff's claim. A waiver of such a claim, once it is made, is final and irrevocable. The right waived is gone forever, and cannot be recalled or reclaimed. *Templer* v. *Muncie Lodge,* 50 Ind. App. 324, 97 N. E. 546, 549; *Libby* v. *Haley,* 91 Me. 331, 39 Atl. 1004, 1005; *Kiernan* v. *Dutchess County Mut. Ins. Co.,* 150 N. Y. 190, 44 N. E. 698, 700. This is so, though the position of the party in whose favor the waiver operates may not have changed. *U. S. Fidelity & Guaranty Co.* v. *Miller,* 237 Ky. 43, 34 S. W. (2d) 938, 76 A. L. R. 12, 15.

We hold, therefore, that the plaintiff has relinquished his rights in the horses, and they should have been charged out of the case.

*Judgment against W. S. Tuttle reversed, and judgment that he recover his costs. Judgment against Ella Cameron reversed, and cause against her remanded.*